UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMMIE C.,[1] <br><br>         Plaintiff, <br>    v. <br><br> FRANK BISIGNANO,[2] COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br>         Defendant. | Case No. 5:23-cv-02551-AJR <br><br> **MEMORANDUM DECISION AND ORDER** |

## I.

## INTRODUCTION

    Jamie C. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI"). The parties consented,

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano is substituted in as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkts. 6, 8-9.) For the reasons stated below, the decision of the Commissioner is REVERSED and this action is REMANDED to the Agency for further administrative proceedings consistent with this decision.

## II.
## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on May 26, 2021, alleging an inability to work beginning on January 1, 2003. (Dkt. 12-6 at 2-6.) This application was denied upon initial consideration on October 27, 2021, and upon reconsideration on February 17, 2022. (Dkt. 12-5 at 2-6, 10-14.) Plaintiff filed a request for hearing by an Administrative Law Judge on March 23, 2022. (Dkt. 12-5 at 16.) Subsequently, Administrative Law Judge Kathleen Fischer (the "ALJ") issued a decision denying the application on January 3, 2023. (Dkt. 12-3 at 18-29). The ALJ's decision became the final when the Appeals Council denied Plaintiff's request for review on November 20, 2023. (Dkt. 12-3 at 2-4.) Plaintiff then sought judicial review of the Commissioner's decision by filing a complaint in the U.S. District Court on December 14, 2023. (Dkt. 1.)

## III.
## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other

substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

<u>Tackett</u>, 180 F.3d at 1098-99; see also <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. <u>Bustamante</u>, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. <u>Id.</u> at 954. If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by

reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## IV.
## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Dkt. 12-3 at 18-29.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 28, 2021. (Id. at 21.) At step two, the ALJ found that Plaintiff had the following severe impairments: "cervical spine disorder; lumbar spine disorder; bilateral carpal tunnel syndrome (CTS); obesity; and schizoaffective disorder." (Id. (bold omitted).) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings in the regulations. (Id.)

The ALJ assessed Plaintiff's residual functioning capacity ("RFC") and concluded that he could perform light work as defined in 20 CFR 416.967(b), except that Plaintiff: "can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he can never climb ladders, ropes, or scaffolds; he must avoid concentrated exposure to working at unprotected heights; he can frequently finger, handle, and feel with his bilateral upper extremities; he can perform simple tasks, in a nonpublic setting, with no concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." (Id. at 23 (bold omitted).) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the

alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained" in the ALJ's decision. (Id. at 24.)

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a cleaner. (Id. at 27.) The ALJ found that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Id.) Alternatively, at step five, the ALJ found that there were other jobs that existed in significant numbers in the national economy that Plaintiff could also perform, considering his age, education, work experience, and RFC. (Id. at 28.) Specifically, the ALJ found that Plaintiff could perform the following representative occupations: (1) Assembler, Products (DOT 706.687-010), with approximately 16,000 jobs in the national economy; (2) Assembler, Small Products (DOT 706.684-022), with approximately 20,000 jobs in the national economy; and (3) Car Wash Attendant (DOT 915.667-010), with approximately 34,000 jobs in the national economy. (Id.) Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Social Security Act from April 28, 2021, through the date of the decision. (Id. at 29.)

## V.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180

F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Auckland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

# VI.
# DISCUSSION

Plaintiff raises two grounds for relief: (1) whether the ALJ properly considered if Plaintiff's psychiatric conditions met the requirements of Listing 12.03(C); and (2) whether the ALJ properly considered Plaintiff's subjective statements regarding his physical and mental impairments in formulating the RFC. (Dkt. 13 at 3, 12.) For the reasons set forth below, the Court REVERSES the decision of the Commissioner and REMANDS this action to the Agency for further administrative proceedings consistent with this decision.

A.  **Remand Is Appropriate So That The ALJ Can Explain Why Plaintiff Does Not Meet Listing 12.03, Schizophrenia Spectrum And Other Psychotic Disorders.**

In Plaintiff's first ground for relief, Plaintiff contends that he meets the

requirements of Listing 12.03(A) and (C). (Dkt. 13 at 3-4.) Listing 12.03, Schizophrenia spectrum and other psychotic disorders, is satisfied where a claimant meets the criteria of paragraphs (A) and (B), or (A) and (C).[3]

The criteria of 12.03(A) are as follows:

> A. Medical documentation of <u>one</u> or more of the following:
>> 1. Delusions or hallucinations;
>> 2. Disorganized thinking (speech); or
>> 3. Grossly disorganized behavior or catatonia.

The criteria of 12.03(C) are as follows:

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); <u>and</u>
>> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

The ALJ considered whether the Plaintiff satisfied the criteria for 12.03(C). (Dkt. 12-3 at 22.) The ALJ found that Plaintiff did not meet the criteria for 12.03(C) because (1) there was "no evidence of ongoing treatment, therapy, or structured support that diminishes the symptoms and signs of the [Plaintiff's] schizoaffective disorder;" and (2) because there was no "evidence of marginal adjustment, i.e., minimal capacity to adapt to changes in the environment or to demands that are not

---

[3] <u>See</u> https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_03.

already part of one's daily life." (Id.)

Plaintiff contends that he satisfies 12.03(A) because "he has been documented throughout this record to have delusions or hallucinations." (Id.) Here, Defendant appears to concede that Plaintiff meets the criteria of 12.03(A). (See Dkt. 19 at 7 ("[T]here is no dispute that Plaintiff had a severe impairment of schizophrenia with delusions/hallucinations noted in the record. However, as the ALJ correctly noted Plaintiff does not meet prong 'C' of Listing 12.03.").) Defendant argues that the ALJ correctly determined that Plaintiff does not meet the criteria for 12.03(C). (Id.) Accordingly, the Court's analysis will focus on the ALJ's evaluation of whether Plaintiff meets the criteria for 12.03(C).[4]

### 1. **Medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder.**

Plaintiff argues that he meets the criteria for 12.03(C)(1) and cites to: (1) records from the San Bernardino County Department of Behavior Health which state that Plaintiff was taking Geodon and Venlafaxine for his mental impairments, (Dkt. 13 at 6-12 (citing Dkt. 12-8 at 150, 154-165)); and (2) records showing treatment with Plaintiff's psychiatrist, Dr. Krishna Murthy, M.D., (id. (citing Dkt. 12-8 150, 154-165, 169-170, 180-197)). The dates of these records range from January of 2020 to December of 2021. (Dkt. 12-8 at 165-183.) Plaintiff identifies portions of the records that state that "taking the current medication really has helped him where he is not coming out with bizarre ideation, but still gets extremely suspicious and feels that people are really after him," (id. at 165, 1/27/2020); that "the current medication really has helped him where he does not have any issues

---

[4] The Court also independently concludes that Plaintiff meets the criteria of 12.03(A) because he has extensive medical documentation of both delusions and hallucinations. (See Dkt. 12-8 at 166 ("functional impairment: paranoid delusions. hearing voices"); id. at 194 ("He [also] had problems of dealing with the spirits and coming out with bizarre delusions.").)

8

with helpless, hopeless, and worthless thoughts," (id. at 163, 3/27/2020); that "[h]e was still experiencing negative thoughts, [but] reported that the medication was helping," (id. at 160, 5/18/2020); "that the medication is working both[,] Geodon and venlafaxine," (id. at 159, 6/4/2020); that "he is taking his medications as advised and reported that he is doing okay," (id. at 158, 8/5/2020); that "[t]aking the current medication is helping him out," (id. at 157, 10/7/2020); that his medications "have helped him out both with the suspicious thoughts, depression, and paranoia," (id. at 155, 2/16/2021); that he was "not coming out with any persecutory delusions the way he used to in the past," (id.); that "taking the medications has helped him with his depression and mood swings," (id. at 167, 4/27, 2021); "that the current medication Geodon and Effexor is helping him and wants to continue the same," (id. at 171, 8/5/2021); that he "want[ed] to continue present medications," (id. at 191, 10/5/2021); that he "report[ed] that the current medication is helping him," and that he would "continue the medications." (Id. at 185, 12/21/2021.) Based on the foregoing, there is at least some evidence in the record of "medical treatment, mental health therapy, [or] psychosocial support . . . that is ongoing and that diminishes the symptoms and signs of the mental disorder." Listing 12.03(C)(1).

### 2. **Marginal adjustment, minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life.**

Listing Section 12.00(G)(2)(c) states that "'[m]arginal adjustment' means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. [The Social Security Administration] will consider [a claimant to] have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of [the claimant's] symptoms and signs and to deterioration in [the claimant's] functioning; for example, [the claimant has] become unable to function outside of [his or her] home

or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of [the claimant's] mental disorder, evidence may document episodes of deterioration that have required [the claimant] to be hospitalized or absent from work, making it difficult for [the claimant] to sustain work activity over time."

Regarding this category, the ALJ stated, "[n]or is there evidence of marginal adjustment, i.e., minimal capacity to adapt to changes in the environment or to demands that are not already part of one's daily life." (Dkt. 12-3 at 22.) Plaintiff contends that he also meets the criteria for 12.03(C)(2) by pointing to his subjective symptom testimony and medical source statements that Plaintiff asserts support limitations on his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and respond to changes in the workplace. (Dkt. 13 at 12.)

In light of the evidence suggesting medication diminished the symptoms and signs of the Plaintiff's schizoaffective disorder as detailed above, and in light of the ALJ's lack of explanation why there was no evidence of marginal adjustment, remand is appropriate so that the ALJ can explain why Plaintiff does not meet the paragraph C criteria for Listing 12.03. See e.g. Jennifer A v. O'Malley, 2024 WL 400183, at *9 (S.D. Cal. Feb. 2, 2024) ("[F]ailure to meaningfully engage with the medical evidence at step three, in combination with . . . boilerplate language is an independent basis for remand."), report and recommendation adopted sub nom., 2024 WL 1177761; Jamie S. v. Kijakazi, 2022 WL 1491668, at *6 (E.D. Wash. May 11, 2022) ("While the ALJ notes that she did not find that Plaintiff's conditions satisfied the paragraph C criteria, she does not provide any explanation supporting this assessment. The Court therefore cannot meaningfully evaluate whether the ALJ's finding is supported by substantial evidence, and the Court will remand this

matter with instructions to reevaluate whether Plaintiff's mental impairments establish the paragraph C criteria for Listings 12.04 and 12.06."); J.A. v. Kijakazi, 2022 WL 2181693, at *14 (N.D. Cal. June 16, 2022) (Remanding where "[t]he ALJ's failure to explain his Paragraph C determination [left] the Court to guess why the longitudinal record did not suffice to satisfy C1 and C2.").

### B. The ALJ Improperly Rejected Plaintiff's Subjective Symptoms Based Solely On Inconsistencies With Objective Medical Evidence.

In Plaintiff's second ground for relief, Plaintiff asserts that the ALJ failed to properly consider Plaintiff's subjective symptom testimony. (Dkt. 13 at 12.) Having already determined that remand is appropriate, the Court need not address Plaintiff's second ground for relief. Regardless, the Court has reviewed this section and will provide guidance on remand.

Plaintiff contends that the ALJ "provided only one reason for rejecting the totality of Plaintiff's subjective statements and testimony under oath in this case," specifically that "the subjective statements of record and testimony [were] not supported by the objective medical evidence." (Id. at 22.) In response, Defendant contends that "the ALJ did not solely rely on Plaintiff's objective findings and evidence, but also noted improvement with treatment," as well as Plaintiff's ability to drive. (Dkt. 19 at 13-14 (citing Dkt. 12-3 at 23-25).)

#### 1. Legal Standard.

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. See Garrison, 759 F.3d at 1014. "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused

some degree of the symptom." Id. "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (internal quotation marks omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. See Trevizo, 871 F.3d at 678; see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal quotation marks omitted).

Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional

restrictions caused by the claimant's symptoms. See Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm' r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035m 1039 (9th Cir. 2008); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." (internal quotation marks omitted))." The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Brown-Hunter, 806 F.3d at 493. Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### 2. Analysis.

Here, the ALJ considered Plaintiff's subjective symptom testimony and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Dkt. 12-3 at 24) The ALJ did not find evidence of malingering. (Id.) Accordingly, the ALJ was required to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom complaints. See Trevizo, 871 F.3d at 678.

In discounting Plaintiff's subjective complaints, the ALJ cited to "clinical and diagnostic findings [that] fail[ed] to corroborate the full extent of the alleged severity, limiting effects, and frequency of [Plaintiff's] physical, neurological, and mental health complaints."  (Dkt 12-3 at 24.)  Specifically, the ALJ identified: (1) an electromyography and nerve conduction study ("EMG/NCS") from February 4, 2020, that demonstrated evidence of axonal sensorimotor neuropathy and bilateral CTS, but failed to show any signs of upper extremity myopathy or cervical radiculopathy, (id. (citing Dkt. 12-8 at 15)); (2) a March 2020 MRI of Plaintiff's cervical spine which sowed "mild" findings, (id. (citing Dkt. 12-8 at 38)); (3) cervical and lumbar radiographs from July 27, 2021 which showed "mild degenerative disease," (id. (citing Dkt. 12-8 at 144)); and (4) examination records from July of 2021 showing normal gait and balance without an assistive device, (id. (citing Dkt. 12-8 at 140)), normal ranges of motion throughout the extremities, (id. (citing Dkt. 12-8 at 141)), full motor strength rated 5/5 without focal deficits, (id. (citing Dkt. 12-8 at 141)), and intact sensation, (id. (citing Dkt. 12-8 at 141)).  The ALJ also cited treatment records showing improvement of Plaintiff's pain and other symptoms with medications and injections.  (Id. (citing Dkt. 12-8 at 52, 55, 119, 134-35).)

Regarding Plaintiff's subjective mental symptoms, the ALJ discounted these by citing to: (1) psychiatric visit notes suggesting that Plaintiff responded well to medication, (Dkt. 12-3 at 25 (citing Dkt. 12-8 at 155, 160)); (2) overall normal clinical observations of the Plaintiff's behavior, perceptual processes, thought processes and content, memory, and orientation, (id. (citing Dkt. 12-8 at 161, 184, 187, 190, 193, 196)); and (3) statements to his treating psychiatrist that Plaintiff was "living with his current wife and children," that this was "really helping him," and that he was "not going through the problems like he used to in the past."  (Id. (citing Dkt. 12-8 at 154).)  Finally, the ALJ cited to portions of the consultative examiner's

report and Plaintiff's psychiatric records where Plaintiff denied hallucinations and exhibited normal mental status upon examination. (Id. (citing Dkt. 12-8 at 25-28, 154, 170).)

Accordingly, the ALJ found that "the objective mental health evidence of record does not reflect the severe social, emotional, and perceptual deficits to the degree alleged by [Plaintiff.]" (Dkt. 12-3 at 26.) Further, the ALJ determined that "[t]he absence of such evidence, coupled with the [Plaintiff's] largely normal clinical assessments, support[ed] the adoption of mental limitations as assessed in" the hearing decision. (Id. at 26.) While the ALJ did mention that Plaintiff "maintains a valid driver's license and remains capable of driving," the ALJ did not cite to this evidence in rejecting Plaintiff's subjective complaints. (Id. at 23.) Rather, the ALJ relied on "the objective mental health evidence of record," Plaintiff's physical examinations, and Plaintiff's treatment history to reject Plaintiff's subjective complaints. (Id. at 23, 26.) Thus, on remand, the ALJ should provide specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom complaints beyond solely their inconsistency with the objective medical evidence presented. See Bray, 554 F.3d at 1227.

\\

\\

\\

\\

\\

# VII.
# CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner is and remanding this action to the Agency for further administrative proceedings consistent with this decision. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 23, 2025

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE